| DISTRICT COURT, COUNTY OF DENVER, STATE OF COLORADO<br>Court Address: 1437 Bannock Street<br>Denver, CO 80202 | |
| --- | --- |
| Plaintiff: **MJA, Inc., dba PRIMETIME SPORTS BAR**<br><br>v.<br><br>Defendant: **WESTERN WORLD INSURANCE** | **▲ COURT USE ONLY ▲** |
| Attorneys for the Plaintiff:<br>Richard M. Crane, Esq.<br>675 Kalamath Street<br>Denver, Colorado 80204<br>Phone: (303) 573-5731<br>Fax: (303) 893-6474<br>rick@richardcranelaw.com<br>Atty. Reg. # 11218<br><br>Joseph M. Elio, Esq.<br>Law One<br>1444 Blake Street<br>Denver, CO<br>Phone: (303) 831-8313<br>Fax: (303) 292-1956<br>jelio@elawone.net<br>Atty. Reg. # 14066 | Case Number: 15CV32571<br><br>Court Room:   280 |
| **PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND** | |

COMES NOW, Plaintiff, by through its attorneys, for their Amended Complaint, state and allege as follows:

## GENERAL ALLEGATIONS

1. Plaintiff MJA is a resident of the State of Colorado.

2. Defendant Western World Insurance Company is authorized to write surplus line insurance in the State of Colorado with its principal place of business being Franklin Lanes, New Jersey, and is a non-resident of the State of Colorado.

3. Venue is proper in the County designated in this Complaint pursuant to C.R.C.P. 98(c).



EXHIBIT
1

4. Defendant issued a commerical lines policy to Plaintiff, policy number PGP0768848, with coverage from October 13, 2012 to October 13, 2013.

5. The above-referenced insurance policy provided liquor liability coverage to Plaintiff, with Defendant agreeing to "pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason on the selling, serving, or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any 'suit' seeking those damages." *See* endorsement CG-00-33-12-07.

6. The above-referenced liquor liability coverage provided Plaintiff with combined limits of $300,000.

7. Prior to Defendant issuing an insurance policy to Plaintiff, Plaintiff had to complete an insurance application form. Plaintiff did complete this required application form and anwered all questions truthfully including the question regarding the number of assault or battery claims in the past three (3) years and the question whether there were Past Employee Practice Claims or any known situations that would give rise to a claim.

8. The above-referenced insurance policy application failed to advise Plaintiff that Plaintiff must advise Defendant if any of Plaintiff's anwers on the policy application should later prove to be incorrect based upon a change in circumstances.

9. On or about July 18, 2013, Defendant mailed to Plaintiff a "Notice of Cancellation" stating that the insurance policy that Defendant issued to Plaintiff would be cancelled on August 19, 2013 and gave Plaintiff as the reason for cancellation, "substancial increase in the risk, unknown at issuance".

10. On or about August 28, 2013, the Defendant issued to Plaintiff a "General Change Endorsement", with an effective date of endorsement of August 19, 2013. The Endorsement stated that policy number PGP0768848 would be cancelled effective August 19, 2013 for "substancial increase in the risk, unknown at issuance".

11. On or about March 26, 2014, Plaintiff Lori Monson filed suit in the Denver District Court naming Plaintiff MJA as a Defendant in Denver District Court case number 2014CV31994.

12. The above-referenced suit alleged that MJA had willingly served alcohol to a visibly intoxicated Rebecca Maez on August 31, 2013. The suit further alleged that Lori Monson's daughter Jennifer Monson, was killed when an intoxicated Rebecca Maez drove her motor vehicle southbound in the northbound HOV lane of Interstate 25 and collided with the motor vehicle driven by Jeremy DePinto, traveling in the southbound HOV lane of Interstate 25 and in which Jennifer Monson was a passenger.

13. After the above-referenced collision, test results indicated that Rebecca Maez had a blood alcohol level of .226 grams of alcohol per 100 milliliters of blood, more than four (4) times the legal limit.

14. At the time of the above-referenced collision, Plaintiff MJA was an established business licensed in the State of Colorado to serve alcoholic beverages and was operating under the trade name of "Primetime Sports Bar".

15. In the late hours of August 30, 2013 and/or early morning of August 31, 2013, Rebecca Maez was a patron of Prime Time Sports Bar.

16. On or about May 21, 2014, as a result of the above-referenced motor vehicle collision, Jeremy DePinto filed suit in Denver District Court naming MJA as a Defendant in Denver District Court case number 2014CV31257. DePinto made the same allegations against MJA as did Lori Monson regarding serving alcohol to a visibly intoxicated Rebecca Maez.

17. In a letter dated June 26, 2014, Defendant advised Plaintiff MJA that the above-referenced insurance policy was cancelled effective August 19, 2013 and therefore, Western World Insurance was not providing insurance coverage with regard to the claims and lawsuits of DePinto and Monson.

18. On or about August 28, 2013, Defendant issued a "General Change Endorsement" to Plaintiff stating that policy number PGP0768848 was going to be cancelled effective August 19, 2013 for "Substantial Increase in the Risk, Unknown at Issuance".

19. Defendant refused to provide insurance to Plaintiff MJA in the above-referenced lawsuits.

20. As a result of the above-referenced failure of Defendant to provide a defense, Plaintiff MJA then retained counsel, Joseph Elio of Law One, to defend the lawsuits. Plaintiff MJA has expended a substantial amount in attorney's fees and costs in defending the above-referenced lawsuits.

21. Because Plaintiff MJA could not continue paying attorney's fees to defend it on the above-referenced lawsuits and could not afford to pay any likely judgment against it in the lawsuits, Plaintiff MJA has stipulated to the entry of judgment against it and in favor of Plaintiff Lori Monson in the amount of $280,810.00. In consideration of Plaintiff agreeing to stipulate to an Entry of Judgment against it and in favor of Plaintiff Lori Monson in the amount of $280,810.00 plus post- judgment interest, Lori Monson has agreed not to execute against Plaintiff on the Stiplated Judgement. In addition, Lori Monson has agreed to file a Satisfaction of Judgement at the conclusion of this litigation between Plaintiff and Defendant Western World Insurance.

22. Pursuant to Plaintiff MJA's stipulation to an Entry of Judgement, Judge Catherine Lemon entered judgment against Plaintiff MJA and in favor of Lori Monson in the amount of $280,810.00 plus post-judgement interest on August 10, 2015.

23. Plaintiff MJA retains the specific right to pursue damages against Western World Insurance, both in tort and contract, and pursuant to statutory remedies, for all damages incurred as a result of Western World Insurances' refusal to defend, including its attorney's fees, cost, and any penalties flowing therefrom.

24. Defendants "General Change Endorsement" in which it cancelled Plaintiff MJA's insurance policy effective August 19, 2013 for "substancial increase in risk, unknown at

issue" is not valid or enforceable because it was not supported by sufficient consideration. *Supreme Auto Transport v. Athena Assur. Co.*, 2006 WL 894892 (D. Colo. 2006).

### PLAINTIFF MJA's FIRST CLAIM FOR RELIEF
### (Breach of Contract – Breach of the Duty to Defend)

25. Plaintiff incorporates all previous allegations as if more fully set forth herein.

26. At all times relevant to this action, Defendant had a duty to defend Plaintiff MJA in the suits filed against it by Lori Monson and Jeremy DePinto pursuant to the insurance policy and to Colorado law.

27. Defendant has breached the insurance contract by failing to defend Plaintiff MJA in the suits filed against it by Lori Monson and Jeremy DePinto.

28. As a direct and approximate result of Defendant's breach of contract, Plaintiff MJA has incurred damages in the amount that it has had to pay Joseph Elio in attorney's fees to defend it in the Monson and DePinto lawsuits.

29. Plaintiff MJA has complied with all conditions precedent to coverage under the insurance policy issued by Defendant to Plaintiff MJA.

30. In the event that Plaintiff MJA has failed to comply with any of the contractual obligations, Defendant has not been prejudiced by the failure to comply.

31. In the event that Plaintiff MJA has failed to comply with any contractual obligations, Defendant may not rely on this failure to comply because it breached one or more material obligations under the policy prior to any alleged failure to comply of Plaintiff MJA.

32. Plaintiff MJA can no longer afford to pay Joseph Elio attorney's fees to defend it in the lawsuits filed by Lori Monson and Jeremy DePinto.

33. As a direct and proximate result of Defendant's breach of contract, Plaintiff MJA has been forced to enter into an agreement with Lori Monson wherein MJA agreed to a stipulated judgment being entered against it and in favor of Lori Monson in the amount of $280,810.00 plus post-judgement interest for the death of her daughter Jennifer Monson, in order to protect itself and its assets.

34. When Defendant wrongfully refused to defend Plaintiff MJA, it knew or should have known that it was placing Plaintiff MJA in an intenable position whereby MJA would have to enter into an agreement with Lori Monson in order to protect itself from a probable large verdict at trial.

## PLAINTIFF MJA's SECOND CLAIM FOR RELIEF
### (Breach of Contract – Duty to Indemnify)

35. Plaintiff incorporates all previous allegations as if more fully set forth herein.

36. Defendant is obligated to indemnify Plaintiff for the $280,810.00 plus post-judgement interest judgment that has been entered against it in favor of Lori Monson. Therefore, Defendant has breached its contract by denying coverage to Plaintiff MJA and by failing to indemnify Plaintiff in the amount of the $280,810.00 judgment plus post-judgment interest.

## PLAINTIFF MJA's THIRD CLAIM FOR RELIEF
### (Breach of Duty of Good Faith and Fair Dealing)

37. Plaintiff incorporates all previous allegations as if more fully set forth herein.

38. As providers of insurance services to the public, Defendant at all times had a duty to be actuated by good faith and fair dealing and everything pertaining thereto, abstain from deceptive or misleading practices, and keep, observe, and practice the principals of law and equity in all matters pertaining to the business of insurance.

39. Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith in their dealings with their insureds. Pursuant to its implied duty of good faith and fair dealing, Defendant owed to Plaintiff MJA an obligation to treat Plaintiff's interests with equal consideration to their own interests.

40. Defendant's duty of good faith and fair dealing is a broad and wide-ranging one, extending to everything pertaining to the provision of insurance services to the public. More particularly, Defendant's duty of good faith and fair dealing extends to the renewal and/or cancellation of insurance policies. *See Ballow v. PHICO, Ins. Co.*, 875 P.2d 1354 (Colo. 1993).

41. Defendant has breached its duty of good faith and fair dealing owed to Plaintiff MJA, including but not limited to:

   a.   Failing to give equal consideration to the interests of Plaintiff, it's insured;

   b.   In investigating Plaintiff's claims, failing to diligently search for evidence which supported their insured's (Plaintiff's) claims;

   c.   Seeking to discover only evidence that defeated their insured's (Plaintiff's) claims;

   d.   Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying or withholding benefits, with knowledge or reckless disregard of the lack of reasonable basis for delaying and/or withholding benefits;

   e.   Failing to adopt and implement reasonable standards for the prompt investigation of

claims arising under the insurance policy;

f.    Refusing to pay claims without conducting a reasonable investigation based upon all available information;

g.    Failing to attempt in good faith to effectuate prompt, fair and equitable settlements of claims which liability had become reasonably clear;

h.    Compelling Plaintiff to institute litigation to recover amounts due under the insurance policy by offering substantially less than the amounts Plaintiff is entitled to recover;

i.    Forcing Plaintiff into the costly and lengthy process of litigation;

j.    Attempting to cancel Plaintiff's insurance policy on the basis of "substantial increase in the risk, unknown at issuance", when Plaintiff was truthful regarding the questions that were asked in the insurance application for coverage with Defendant, and Defendant had failed to inform Plaintiff that if Plaintiff's answers to the questions in the application for insurance should become different after the application was signed by Plaintiff, Plaintiff should inform Defendant of the change in the answers;

k.    Attempting to rely on an endorsement that was not supported by sufficient consideration;

l.    Any further acts which may be discovered.

42. Defendants' aforesaid conduct was unreasonable and Defendant either knew said conduct was unreasonable or recklessly disregarded the fact that the conduct was unreasonable.

43. As a direct and approximate result of Defendant's breach of its duty of good faith and fair dealing, Plaintiff has incurred damages in the amount to be proved at the time of trial, including but not limited to the amount of the judgment that has been entered against it in the Lori Monson lawsuit plus post-judgment interest, and the amount of attorney's fees that Plaintiff has been forced to pay to Joseph Elio to defend it in the Monson and DePinto lawsuits.

## PLAINTIFFS FOURTH CLAIM FOR RELIEF
### (Claim for Violation of C.R.S. § 10-3-1115(1)(a) and C.R.S. § 10-3-1116(1))

44. Plaintiff incorporates all previous allegations as if more fully set forth herein.

45. Plaintiff is a "first-party claimant" pursuant to C.R.S. § 10-3-1115(1)(b)(I).

46. Defendant's cancellation of Plaintiff's insurance policy, refusal to defend Plaintiff, and denial of Plaintiff's claim for indemnification on the judgment that has been entered against Plaintiff in favor of Lori Monson is an unreasonable delay and/or denial of Plaintiff's claim for payment of benefits under the insurance policy issued by Defendant to Plaintiff.

47. Pursuant to § 10-3-1116(1), Plaintiff is entitled to attorney's fees and two (2) times the covered benefits.

WHEREFORE, Plaintiff prays for judgment against Defendant on all claims in an amount to be proved at the time of trial, interest at the highest rate allowed by law, costs, expert witness fees and such other and further relief as this Court deems just and proper.

### PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES

Respectfully submitted,

*Electronically Filed – Duly signed original signature of Richard M. Crane available at the offices of Richard M. Crane*

/s/ *Richard M. Crane*
Richard M. Crane.

And

*Electronically Filed – Duly signed original signature of Joseph M. Elio available at the offices of Law One*

/s/ *Joseph M. Elio*
Joseph M. Elio, Esq., Atty. Reg. # 14066
Law One
1444 Blake Street
Denver, CO 80202
Phone: (303) 831-8313

Address of Plaintiff MJA, Inc.:
8101 N. Washington St.
Denver, CO 80229