IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02162-RPM

MJA, Inc., dba PRIMETIME SPORTS BAR,

    Plaintiff,

v.

WESTERN WORLD INSURANCE,

    Defendants.

---

Order Granting Plaintiff's Motion for Certification of Question of Law to the
Colorado Supreme Court Pursuant to C.A.R. 2.1

---

Pursuant to the discussion and rulings made in open court on December 23, 2015, it is

ORDERED that the Plaintiff's motion for certification of question of law to the Colorado Supreme Court Pursuant to C.A.R. 2.1 is granted. It is

FURTHER ORDERED that this Court's ruling on the Defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6) is deferred until after the Colorado Supreme Court rules on the question of law or declines to do so.

This court proposes to certify the question in the form of order attached hereto. Counsels' comments on the proposed form of order may be submitted on or before February 10, 2016.

Date: January 22, 2016        BY THE COURT:

                                              s/Richard P. Matsch
                                              _____
                                              Richard P. Matsch, Senior Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02162-RPM

MJA, Inc., d/b/a PRIMETIME SPORTS BAR,

    Plaintiff,

v.

WESTERN WORLD INSURANCE COMPANY,

    Defendant.

---

(Proposed) Certification of Question of Law to the Colorado Supreme Court
Pursuant to C.A.R. 21.1

---

Upon the Plaintiff's motion, the following question is certified to the Colorado Supreme Court pursuant to C.A.R. 21.1:

It is settled law in Colorado that every contract requires the parties to act in good faith and to deal fairly with each other in performing the express terms of the contract.[1] Does that principle of law restrict an insurance company from cancelling a surplus commercial lines insurance policy by issuing a notice of cancellation under the express language of the policy?[2]

A negative answer to that question would require dismissal of this civil action.

---

[1] CJI-Civ. 30:16 (2015).

[2] In the Plaintiff's motion for certification, the Plaintiff framed the question as follows: "Does Colorado law recognize the claim for bad faith breach of an insurance contract against a surplus lines insurer based upon the insurer's cancellation of an insurance policy mid-term?" (Pl.'s motion to certify at p. 4.)  This Court has reframed the question to be certified.

STATEMENT OF RELEVANT FACTS

MJA, Inc. d/b/a/ Primetime Sports Bar ("MJA" or "the Plaintiff") operated the Primetime Sports Bar at 8101 North Washington Street, Denver, Colorado, serving alcoholic drinks pursuant to a valid liquor license.

Western World Insurance Company ("Western World" or "the Defendant") is an insurance company with its principal place of business in Franklin Lakes, New Jersey. Western World is authorized to write surplus line insurance in the State of Colorado.[3]

Western World issued a commercial lines policy to MJA for the policy period from October 13, 2012, through October 13, 2013 ("the Policy"). The Policy included coverage for liquor liability with combined limits of $300,000.

Before Western World issued the Policy, MJA completed an insurance application form. The application form required MJA to disclose the number of assault or battery claims in the past three years and past employee practice claims or any known situations that would give rise to a claim. MJA answered all those questions truthfully. The application form did not inform MJA that it should advise Western World of any subsequent changes that would make those answers incorrect.

The Plaintiff's application for insurance showed that the Plaintiff was a new business.

---

[3]"Surplus lines insurance" means coverage placed with an eligible nonadmitted insurer as provided by C.R.S. § 10-5-108. *See* C.R.S. 10-5-101.2(13). A "nonadmitted insurer" is an insurer not having a certificate of authority to transact business in Colorado. *See* C.R.S. § 10-5-101.2(11). The Colorado Division of Insurance maintains a list of eligible surplus line insurers. *See* 3 Colo. Code Regs. § 702-2:2-4-1.

On July 18, 2013, Western World mailed to MJA a "Notice of Cancellation" which stated that the Policy would be cancelled on August 19, 2013, due to "substantial increase in the risk, unknown at issuance."

The Notice of Cancellation included the following statement: "UPON WRITTEN REQUEST BY THE NAMED INSURED, THE INSURER WILL PROVIDE THE FACTS UPON WHICH THIS CANCELLATION IS BASED." An attorney for MJA requested an explanation of Western World's decision to cancel the Policy. An email response from Ed Yevak of Prince Insurance Group stated:

> The sequence of events that I am aware of are as follows: The adjustor was responding to a claim filed concerning Julie Romero and subsequently learned of a shooting outside the bar. A file was set up as a precautionary measure and the account was re-evaluated by the insurance carrier and they decided to cancel the account because of "substantial increase in the risk, unknown at issuance".

Attached to the email was a Western World document captioned "Loss Summary of All Claims." The Loss Summary showed that on July 15, 2013, Western World was notified that a claimant named Julie Romero had filed a lawsuit, alleging that she was assaulted by an employee of the insured after being escorted from the building.

The Loss Summary also stated that on July 18, 2013, a claims adjuster learned of a shooting outside Plaintiff's bar when investigating another claim, and a file had been set up for precautionary measures, noting that the policy limit for assault and battery claims was $50,000.00.

July 18, 2013 was the date Western World sent the Notice of Cancellation to MJA.

On August 28, 2013, Western World issued to MJA a "General Change Endorsement" to the Policy which stated: "This policy is cancelled effective 8/19/2013 for Substantial Increase in The Risk, Unknown at Issuance."

After drinking at Primetime Sports Bar on August 31, 2013, Rebecca Maez drove on Interstate 25 and collided with a motor vehicle driven by Jeremy DePinto, killing Jennifer Monson, a passenger in DePinto's vehicle. Test results indicated that Rebecca Maez' blood alcohol level was more than four times the legal limit at the time of the accident.

On March 26, 2014, Lori Monson (the mother of Jennifer Monson) filed a wrongful death action against MJA in the District Court for Denver County, Colorado, claiming that MJA was liable for Jennifer Monson's death because MJA had willingly served alcohol to Rebecca Maez on August 31, 2013, when Maez was visibly intoxicated. On May 21, 2014, Jeremy DePinto filed a personal injury suit against MJA in the Denver District Court, based upon the same facts as those alleged in the Monson suit.

Western World declined to defend and/or indemnify MJA for the Monson and DePinto actions. In a letter dated June 26, 2014, Western World told MJA that the Policy provides no coverage for Monson's and DePinto's claims because the Policy was cancelled on August 19, 2013.

MJA retained counsel to defend the Monson and DePinto lawsuits. Because MJA could not afford to continue funding the cost of defense and could not afford to pay any likely judgment against it, MJA entered into a *Bashor* agreement with Lori Monson which provided for entry of a stipulated judgment against MJA in the amount of $280,810.00. Monson agreed not to

execute on MJA's assets in return for MJA's agreement to pay Monson the amount, if any, that MJA recovers in litigation against Western World.[4]

On August 10, 2015, the Denver District Court entered the stipulated judgment against MJA in the amount of $280,810.00 and post-judgment interest.

MJA filed this civil action against Western World in September 2015, claiming that the Defendant breached an implied duty of good faith and fair dealing when it cancelled the Policy. The Plaintiff contends that because the application form included questions about assault and battery claims and the Plaintiff answered those questions truthfully and was never informed of any requirement to notify the Defendant of changes to those answers, the Defendant had no right to cancel or rescind the Policy based on a change in those circumstances. The Plaintiff also alleges that the Defendant's actual reason for cancelling the Policy was that the Plaintiff was a new business which had a claim made against it during the policy period. In short, the Plaintiff contends that the Defendant's explanation of "substantial increase in the risk, unknown at issuance" was not genuine, and the cancellation was done in bad faith.

The Policy's Liquor Liability Coverage Form states: "[Western World] will have no duty to defend [MJA] against any 'suit' seeking damages for 'injury' to which this insurance does not apply." The Liquor Liability Coverage Form states that the coverage applies to "injury" only if "The 'injury'… occurs during the policy period…."

The Common Policy Conditions include the following provisions regarding cancellation:

---

[4] *See Northland Ins. Co. v. Bashor,* 494 P.2d 1292 (Colo. 1972).

    A.    Cancellation

***

        2.    We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:

            a.    10 days before the effective date of cancellation if we cancel for nonpayment of premium, or

            b.    30 days before the effective date of cancellation if we cancel for any other reason.

***

        4.    Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

        5.    If the policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.... The cancellation will be effective even if we have not made or offered a refund.

        6.    If notice is mailed, proof of mailing will be sufficient proof of notice.

The Plaintiff does not dispute that the Defendant complied with those provisions of the Policy. That is, the Plaintiff acknowledges that the Policy's express terms allow the insurer to cancel the Policy and the Defendant provided the 30-days' advance written notification required for cancellation according to the Policy's terms.

By statute in Colorado, companies authorized to write surplus lines insurance are exempt from statutory notice requirements and restrictions that otherwise apply to an insurer's cancellation of coverages on commercial liability exposures. Specifically, C.R.S. § 10-4-109.7 provides:

> (1) No insurer shall cancel a policy of insurance that provides coverages on commercial exposures such as general comprehensive liability, municipal liability, automobile liability and physical damage, fidelity and surety, fire and allied lines, inland marine, errors and omissions, excess liability, products liability, police liability, professional liability, or false arrest insurance unless such insurer mails by first-class mail to the named insured, at the last address shown in the insurer's records, at least forty-five days in advance a notice of the company's intention to cancel; but, where cancellation is for nonpayment of premium, at least
> ten days' notice of cancellation accompanied by the reasons therefor shall be given.
>
> (2) A notice of cancellation pursuant to this section shall be valid only if it is based on one or more of the following reasons:
>
> (a) Nonpayment of premium;
>
> (b) A false statement knowingly made by the insured on the application for insurance;
>
> (c) A substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless the insured has notified the insurer of the change and the insurer accepts such change.
>
> (3) *This section shall not apply to insurance companies authorized to write surplus line insurance in Colorado....*

C.R.S. § 10-4-109.7 (emphasis added).  *See also* C.R.S. §10-4-110(6) (exempting surplus line insurers from notice requirements pertaining to nonrenewal); C.R.S. §10-4-110.5(3) (exempting surplus line insurers from notice requirements and restrictions on unilateral increase in premium or decrease in coverage), and C.R.S. §10-5-118 (providing that notice requirements of commercial exposures and homeowners policies do not apply to insurance companies authorized to write surplus lines insurance in Colorado).

The Defendant contends these statutory exemptions establish a public policy of permitting a surplus line carrier to contract for unlimited discretion in determining whether to

cancel, refuse to renew, increase the premium or decrease coverage on commercial exposures. The Defendant argues that public policy considerations favor allowing surplus line carriers broad rights to cancel policies because surplus line carriers undertake coverage that admitted carriers refuse to write because of the high risk involved.  The Defendant contends that, as a surplus line carrier, it had discretion to cancel the Policy, so long as it complied with the notice provisions set forth in the Policy.

Date:

BY THE COURT:

_____
Richard P. Matsch, Senior Judge